IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

CEDARAPIDS, INC.               )
                               )
v.                             )     NO. 3:02-1243
                               )     JUDGE CAMPBELL
JOHNSON CRUSHERS               )
INTERNATIONAL, INC., et al.    )

MEMORANDUM

Pending before the Court is Cedarapids' Motion for Partial Summary Judgment with Respect to Defendants' Defenses of Invalidity and Unenforceability (Docket No. 144). Also pending before the Court are: 1) Cedarapids' Motion for Partial Summary Judgment with Respect to Defendants' Affirmative Defenses and Counterclaims Relating to Inequitable Conduct and Fraud (Docket No. 146); 2) Defendants' Motion for Partial Summary Judgment of Invalidity as to Claims 11, 15, 16 and 17 of the '981 Patent and Claims 1, 2, 3, 5, 6, and 17 of the '306 Patent (Docket No. 154); 3) Defendants' Motion for Partial Summary Judgment of Unenforceability as to the '981 Patent and the '306 Patent (Docket No. 157); and 4) Defendants' Motion for Partial Summary Judgment of Invalidity as to Claims 8, 10, 11, 13, 15, 16, 18 and 19 of the '306 Patent (Docket No. 160).

Cedarapids' Motion for Partial Summary Judgment with Respect to Defendants' Defenses of Invalidity and Unenforceability (Docket No. 144) is GRANTED. Cedarapids' Motion for Partial Summary Judgment with Respect to Defendants' Affirmative Defenses (Docket No. 146) is GRANTED. Defendants' Motion for Partial Summary Judgment of Invalidity (Docket No. 154) is DENIED. Defendants' Motion for Partial Summary Judgment of Unenforceability (Docket No. 157) is DENIED. Defendants' Motion for Partial Summary

Judgment of Invalidity (Docket No. 160) is DENIED.

FACTS

Plaintiff Cedarapids, Inc. ("Cedarapids") asserts that Defendants Johnson Crushers International, Inc. ("JCI") and Kolberg-Pioneer, Inc. ("KPI") have infringed two patents owned by Cedarapids. The patents at issue are U.S. Patent No. 5,875,981 (the "'981 Patent") and U.S. Patent No. 5,971,306 (the "'306 Patent") (the "Patents-in-Suit"). In response to Cedarapids' infringement action, JCI and KPI have asserted defenses of patent invalidity and unenforceability.

The '981 Patent and the '306 Patent relate to a gyratory cone crusher having tramp iron relief which is a type of heavy equipment used to crush rock and stone into smaller pieces of aggregate material (Docket No. 123 at 1, Docket No. 119 at 2 and Cedarapids' Markman Ex. 1 and 2). The '981 Patent issued on March 2, 1999 and the '306 Patent issued on October 26, 1999 (Docket No. 186 at 3). The '981 Patent and the '306 Patent trace their history back to a patent application, Serial No. 617, 346 (the "'346 Application"), that was filed by Cedarapids on March 18, 1996, and which issued on February 17, 1998 as U.S. Patent 5,718,390 (the "'390 Patent"), although Defendants dispute whether Cedarapids is entitled to claim the benefit of such filing date (Docket No. 186 at 2-3). On October 17, 1996, before the '390 Patent issued, Cedarapids filed patent application Serial No. 773,315, as a divisional application of the '346 Application (the "'315 Divisional") (Docket No. 186 at 2). The '315 Divisional was later abandoned (Docket No. 186 at 2). On June 12, 1997, before the '315 Divisional was abandoned, Cedarapids filed patent application, Serial No. 874, 018 (the "'018 Application"), as a continuation of the '315 Divisional (Docket No. 186 at 2). This continuation application of the

2

'315 Divisional issued on March 2, 1999 as the '981 Patent (Docket No. 186 at 2). On October 29, 1998, before the '981 Patent issued, Cedarapids filed a second continuation application, Serial No. 182, 257 (the "'257 Application"), which subsequently issued on October 26, 1999 as the '306 Patent (Docket No. 186 at 2).

Cedarapids is the assignee of the Patents-in-Suit and is headquartered in Cedar Rapids, Iowa (Docket No. 186 at 24). Cedarapids develops and manufactures gyratory cone crushers, along with a wide range of heavy duty equipment used in the road building, and other, industries (Docket No. 186 at 24). Prior to 1995, Cedarapids had a division located in Eugene, Oregon that was known as the El-Jay division ("El-Jay") of Cedarapids (Docket No. 186 at 24). El-Jay made, among other things, gyratory rock crushers for Cedarapids (Docket No. 186 at 24). In 1995, Cedarapids closed its El-Jay division and transferred the manufacturing operations of El-Jay to its headquarters in Cedar Rapids (Docket No. 186 at 25).

JCI was formed when Cedarapids decided to close its El-Jay division and a number of employees of El-Jay left Cedarapids to form JCI (Docket No. 186 at 18 and 25). JCI was created to design, manufacture and sell aggregate processing equipment in competition with other participants in the industry, including Cedarapids (Docket No. 186 at 28). All of JCI's founders, Roger Clark ("Clark"), Robert Hoitt ("Hoitt"), David Peaks ("Peaks"), Alan Orre ("Orre"), Randy Laskey ("Laskey") and Terry Cummings ("Cummings"), were former Cedarapids' employees (Docket No. 186 at 19). Clark, Donald Henry ("Henry"), Jon Juhlin ("Juhlin") and Gerald Parker ("Parker"), named inventors of the Patents-in-Suit, have been or are employed by JCI (Docket No. 186 at 19 and 25, and Exs. A & B). While Clark was a founder of JCI, Parker and Juhlin joined JCI later as part of its crusher design team (Docket No. 186 at 19 and 28).

3

JCI's first president, Hoitt, was the former general manager of the El-Jay division, and Peaks was in charge of the design effort that led to the accused JCI crusher (Docket No. 186 at 19 and 28). In November, 1998, JCI was acquired by Astec Industries, Inc. ("Astec") located in Chattanooga, Tennessee (Docket No. 186 at 25). JCI's current president and general manager, Jeff Elliott ("Elliott"), is Cedarapids' former Senior Vice President of Crushing and Screening (Docket No. 186 at 19).

KPI is in the business of selling, among other things, JCI's gyratory cone crushers (Docket No. 186 at 26). KPI is located in South Dakota and is also owned by Astec (Docket No. 186 at 26). KPI and JCI share a sales staff and a sales manager who report to KPI (Docket No. 186 at 29). KPI employs David Ostergaard ("Ostergaard"), also a named inventor of the Patents-in-Suit and '981 Patent. It is disputed, however, whether Ostergaard is a properly named inventor of either of the Patents (Docket No. 186 at 26 and Exs. A & B).

Each inventor of the Patents-in-Suit, including Clark, Parker, Juhlin and Ostergaard, signed a declaration (the "Declarations") and assisted in the prosecution of the Patents-in-Suit while employed at Cedarapids at its El-Jay division (Docket No. 186 at 27). On March 14, 1996, the inventors of the Patents-in-Suit all signed an assignment document transferring their rights in the Patents-in-Suit to Cedarapids (the "Assignments") (Docket No. 186 at 27). These Assignments were recorded in the United States Patent and Trademark Office on April 5, 1996, and can be found at Reel 7844, Frames 0654-0668 (Docket No. 186 at 27). There is some dispute whether each of the inventors of the Patents-in-Suit was obligated pursuant to their employment contracts to execute the Assignments (Docket No. 186 at 26-27).

Cedarapids has filed a motion for partial summary judgment (Docket No. 144) on

4

Defendants' defenses of invalidity and unenforceability based upon the doctrine of "assignor estoppel". Cedarapids has also filed a motion for partial summary judgment (Docket No. 146) on Defendants' affirmative defenses and counterclaims relating to inequitable conduct and fraud. Defendants have filed motions for partial summary judgment (Docket Nos. 154 and 160) of invalidity as to certain claims of the '981 Patent and the '306 Patent, and a motion for partial summary judgment (Docket No. 157) of unenforceability as to the '981 Patent and the '306 Patent.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003).  In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

ANALYSIS

The doctrine of "assignor estoppel" was first addressed by the Federal Circuit in Diamond Scientific Co. v. Ambico, Inc., 848 F. 2d 1220, 1222 (Fed. Cir. 1988). The doctrine of "assignor estoppel" "prevents a party that assigns a patent to another from later challenging the validity of the assigned patent." Checkpoint Systems, Inc. v. All-Tag Security S.A., 412 F. 3d 1331, 1336 (Fed. Cir. 2005) (citing Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 349, 45 S.Ct. 117, 69 L. Ed. 316 (1924); Mentor Graphics Corp. v. Quickturn Design Systems, Inc., 150 F. 3d 1374, 1377 (Fed. Cir. 1998)). "Assignor estoppel" is an equitable doctrine. Diamond Scientific, 848 F. 2d at 1224. The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor, from claiming what is assigned is a nullity. Id.

In response to Cedarapids' allegations of "assignor estoppel" as set forth in its motion for partial summary judgment (Docket No. 144), Defendants first assert that "assignor estoppel" is inapplicable because the cone crusher claimed in the claims of the '306 Patent is not within the scope of the Assignments made by Juhlin, Parker and Clark. More specifically, Defendants assert that Juhlin, Parker and Clark did not regard their invention as including a cone crusher having a tramp iron relief system having hydraulic channels formed by a manifold that is merely "fastened or affixed" to the frame. Rather, Juhlin, Parker and Clark regarded their invention as being a cone crusher having a "hydraulic relief means including hydraulic channels contained internally within the structure of said lower frame portion." Defendants further assert that the prosecution history of the Patents-in-Suit and their related parent patents support this idea. For example, at no time after the execution of the Assignments and the Declarations did the

6

Case 3:02-cv-01243   Document 224   Filed 08/26/05   Page 6 of 12 PageID #: 1314

inventors sign any other assignment or declaration, including any in connection with either the '315 Divisional, the '981 Patent or the '306 Patent. In addition, Defendants argue that after Juhlin, Parker and Clark executed their Assignments and their Declarations they were never consulted about or made aware of later amendments to the claims that were originally filed in the '346 Application, including amendments made in the '315 Divisional, or claims filed in the '018 Application or '257 Application.

The Court finds Defendants' arguments unpersuasive. The named inventors, including Clark, Juhlin, Parker, Ostergaard and Henry assigned their rights in the '346 Application as follows:

> For good and valuable consideration, the receipt of which is hereby acknowledged, we hereby assign, transfer and convey to CEDARAPIDS, INC., ... the entire right, title and interest in and to any and all improvements which are disclosed in the invention entitled GYRATORY CRUSHER and which is found in the application for Letters Patent of the United States therefor, ..., and in and to all Letters Patent to be issued from said invention pursuant to said application, and any divisions, continuations, substitutions, reissues, reexaminations and extension thereof ...
>
> ... and we hereby covenant and warrant that as of the date hereof we are the true and lawful owners of the entire right, title and interest in said inventions.

(Docket No. 152, Ex. V). In so doing, what Clark, Juhlin, Parker, Ostergaard and Henry assigned to Cedarapids were their rights to the entire invention entitled GYRATORY CRUSHER, irrespective of the fact that there are differences between the first invention of the '346 Application and the invention covered by the Patents-In-Suit. Diamond Scientific, 848 F. 2d at 1226. See also, Q.G. Products, Inc. v. Shorty, 992 F. 2d 1211, 1213-15 (Fed. Cir. 1993). The fact that claims may later have been amended in the claims application process without the assistance of the inventors "does not give appellants' arguments against estoppel any greater

7

force." Id. This being said, while "assignor estoppel" precludes the inventors from defending Cedarapids' patent infringement claims on the grounds that they are now worthless, the doctrine does not prevent Defendants from offering proof at trial of prior art to narrow the scope of the claims in an effort to avoid infringement. O.G. Products, 992 F. 2d at 1214.

Defendants next argue that Juhlin, Parker and Clark received no consideration for the execution of the Assignments, and, as such, Defendants assert the Assignments are invalid. Contrary to Defendants' arguments, however, the proof before the Court shows that each of the inventors, including Clark, Juhlin and Parker, assigned their rights in the invention entitled Gyratory Crusher for "good and valuable consideration, the receipt of which is hereby acknowledged." (Docket No. 152, Ex. V). While the consideration received is not specified, it is presumptively the salary and benefits paid to the inventors during their years of employment at Cedarapids' El-Jay division. See, Diamond Scientific, 848 F. 2d at 1225 (where consideration affidavit reciting one dollar and other valuable consideration, presumably salary over many years and other employment benefits, was found sufficient consideration). In addition, the evidence indicates that as a condition of employment, both Parker and Juhlin executed employment agreements which required them to execute assignments of all discoveries and developments as follows:

> ...I agree that all inventions and all discoveries and developments, whether or not patentable, made or conceived by me during such employment and/or during a period of 180 days thereafter relating either to the Company's business
or to my activities on its behalf will be promptly disclosed to and be the Company's property, and I will assign the same to the Company, and execute any applications for Letters Patent therefore, as the Company may at any time require.

(Docket No. 152, Ex. T). The Court finds that the fact that the Assignments were executed after termination of employment is irrelevant given the proof that the invention entitled Gyratory

8

Crusher was designed and conceived during the inventors employment with Cedarapids (Docket No. 186 at 27).

In addition, Defendants argue that imposing "assignor estoppel" would be inequitable under the facts of this case in that only one of the nine inventors, Clark, of the Patents-in-Suit left Cedarapids to start JCI. Defendants further assert that of the six founders of JCI, Clark was the only named inventor of the Patents-In-Suit, and there is no evidence that he had a controlling interest in JCI. Defendants also argue that it is irrelevant that the other five founders of JCI are former employees of Cedarapids, and that while Juhlin, Parker and Henry later came to work for JCI, there is no proof that any of them had any controlling authority over JCI.

Whether two parties are in privity for the purpose of the application of the doctrine of "assignor estoppel" requires a balancing of the equities and evaluation of all direct and indirect contacts. Mentor Graphics, 150 F. 3d at 1379. It is matter for the sound discretion of the Court. Checkpoint Systems, 412 F. 3d at 1336. "Whether two parties are in privity depends on the nature of their relationship in light of the alleged infringement. 'The closer that relationship, the more the equities will favor applying the doctrine.'" Mentor Graphics, 150 F. 3d at 1379. "Assessing a relationship for privity involves evaluation of all direct and indirect contacts." Id.

The Court finds that the balance of the equities in this case requires a finding that JCI is in privity with the assignors. It is undisputed that all of the founders of JCI, Clark, Hoitt, Peaks, Orre, Laskey and Cummings, were former employees of Cedarapids, and that Clark was a named inventor of the Patents-In-Suit (Docket No. 186 at 19 and 25). Hoitt, the former general manager of the El-Jay Division, became the first president of JCI, Peaks became Vice President of Engineer, Clark, was the Production Engineering Manager, Orre was the Service Manager,

9

Laskey was the Manufacturing Manager, and Cummings was the Vice President of Sales and Marketing (Docket No. 152 Ex. X at 408, 423-424). In addition, JCI later hired two other inventors of the Patent-In-Suit, Juhlin and Parker, and another former Cedarapids employee, Dan Drinkwater ("Drinkwater"), to join JCI's cone crusher team (Docket No.152, Ex. X at 427-428). Furthermore, Elliot, the current president of JCI, worked for Cedarapids for over 20 years and is a former Cedarapids officer (Docket No. 152, Ex. Z at 461-465). Given these relationships, the balance of the equities requires the extension of the doctrine of "assignor estoppel" to JCI.

Defendants also argue that "assignor estoppel" is inapplicable to KPI because there is no properly named inventor in privity with KPI. It is undisputed that KPI purchases the accused products from JCI. In addition, it is undisputed that JCI and KPI share a joint sales department, and JCI and KPI are both owned by Astec (Docket No. 186 at 26). Furthermore, it is undisputed that KPI employs Ostergaard, Cedarapids former Chief Engineer and employee of thirty years, but it is disputed whether Ostergaard was a properly named inventor of the Patents-in-Suit (Docket No. 186 at 26).

While the relationships between the named inventors and KPI are more remote than those of JCI, they exist and are significant, regardless of whether Ostergaard was properly named as an inventor of the Patents-in-Suit. More specifically, the undisputed facts show that JCI and KPI use a joint sales department to purchase and market the allegedly infringing device. The proof also shows that JCI and KPI are under common ownership by Astec. Given the nature of these relationships, the Court finds that the equities dictate a finding of privity between the inventors and KPI. See, Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F. 2d 821 (Fed. Cir. 1991) (privity found between inventor and second corporation in view of first corporation's direct

10

transfer of technology to second company with which it entered into joint development program, continuous involvement of inventor who was major shareholder and chief executive officer of first corporation, inventor's indemnification of second company and second company's financial involvement in first corporation.)

Finally, Defendants argue that summary judgment is inappropriate under a theory of "assignor estoppel" in light of Cedarapids' unclean hands and fraud. Defendants argue that Cedarapids is guilty of fraud and unclean hands because Cedarapids intentionally withheld material prior art form the Patent Office upon the filing and prosecution of the Patents-in-Suit.

In a patent case, fraud or inequitable conduct prevents a patentee from asserting the doctrine of "assignor estoppel" when a "patentee fails to disclose material information with an intent to deceive." HWB, Inc. v. Braner, Inc., 1994 WL 447530 at *6 (N.D. Ill Aug. 16, 1994) (quoting Leading Edge Technology Corp. v. Sun Automation Inc., 23 U.S.P.Q. 2d 1161, 1168 (D. Md. 1991)). While this may be the rule in many cases, it does not hold that doctrine of "assignor estoppel" can never be applied to an equitable defense. Shamrock Technologies, Inc. v. Medical Sterilization, Inc., 903 F. 2d 789, 795 (Fed. Cir. 1990) (rejecting contention that mere classification of defense as equitable bars consideration of the doctrine of "assignor estoppel").

The Court finds that Defendants' allegations of an inequitable conduct defense to Cedarapids' assertion of "assignor estoppel" are not appropriate in this case where the inventors/assignors have affirmatively stated in their Declarations that they are the "original" and "joint first" inventors of the invention and that they are aware of their duty to disclose all information material to patentability (Docket No. 152 at Ex. U). See, Diamond Scientific, 848 F. 2d at 1226; Shamrock Technologies, 903 F. 2d at 795 (where allegations made in support of an

11

inequitable conduct defense are directly contradicted by the assignor/inventor's statements made in his declaration, the defense is non-viable and the equitable doctrine of "assignor estoppel" bars its assertion). This is especially true where Defendants, by their own admission, state that the material and prior art intentionally withheld pre-dates the earliest possible filing dates of the '981 Patent and the '306 Patent.

Accordingly, the Court finds that Defendants are estopped by the doctrine of "assignor estoppel" from asserting the defenses of invalidity and unenforceability with respect to the '981 and '306 Patent. In addition, the Court finds that, in light of the undisputed facts of the case, the doctrine of "assignor estoppel" serves as a bar to Defendants' affirmative defenses and counterclaims of inequitable conduct and fraud.

Given the Court's ruling, the Court finds that Cedarapids' Motion for Partial Summary Judgment with Respect to Defendants' Defenses of Invalidity and Unenforceability (Docket No. 144) is GRANTED. In addition, Cedarapids' Motion for Partial Summary Judgment with Respect to Defendants' Affirmative Defenses and Counterclaims Relating to Inequitable Conduct and Fraud (Docket No. 146) is GRANTED. Defendants' Motions for Summary Judgment based upon the Invalidity of the claims of the '981 Patent and the '306 Patent (Docket Nos. 154 and 160) are DENIED. Defendants' Motion for Summary Judgment based upon the Unenforceability of the "981 Patent and the '306 Patent (Docket No. 157) is DENIED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE